# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM MORRIS KIMBROUGH,<br><br>Defendant. | Criminal Action No.<br><br>1:93-cr-14-RWS |

## ORDER

This case comes before the Court on Defendant William Kimbrough's Amended Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 ("Motion") [Docs. 104, 107], the Government's "Jurisdictional Opposition" to Defendant's Motion [Doc. 109], and Defendant's Reply [Doc. 110].

Defendant's case was reviewed by the Federal Defender's Office ("FDO") pursuant to the April 8, 2020 Administrative Order 20-02 IN RE: APPLICATION OF SECTION 603 OF THE FIRST STEP ACT (2018) [Doc. 105], and the FDO has elected to advocate on Mr. Kimbrough's behalf.

In May 1993, following a jury trial, Defendant was convicted of five counts of armed robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and four counts of

use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). On October 26, 1993, he was sentenced to a term of imprisonment totaling 990 months (or 82 ½ years). [Doc. 41].[1] Defendant was sentenced to 210 months on the five armed bank robbery offenses, which were ordered to run concurrently, and 60 months for the initial § 924(c) offense, followed by consecutive sentences of 240 months for each of the three additional § 924(c) offenses (known as "stacking"). At the time, 990 months was the lowest sentence allowed by governing statutory mandatory minimums. [Doc. 107 at 5; Presentence Report at 18].

Defendant Kimbrough, who is 60 years old, has served 29 years of his sentence. He is incarcerated at FCI Coleman-Medium and will become eligible for release in September 2061. [Doc. 107 at 7, Exhibit C at 3]. He seeks a sentence of time-served and requests that he be permitted to return home and begin serving his term of supervised release. Defendant asserts that a reduction of sentence is warranted in his case based primarily upon his serious medical conditions and the sentence imposed (pursuant to now repealed law), plus his record of rehabilitation while incarcerated, his family support, and the combination of all of these things with the coronavirus pandemic.

---

[1] The presiding judge was the former U.S. District Court Judge, Jack T. Camp.

**Exhaustion of Administrative Remedies**

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute."  United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010).  Following amendment by the First Step Act allowing a defendant to file a motion for compassionate release, the governing statute reads:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . .

18 U.S.C. § 3582(c).

Thus, Section 3582 mandates that an inmate must exhaust administrative remedies before seeking judicial relief.  See, e.g., United States v. Kranz, 2020 WL 2559551, at *3 (S.D. Fla. May 20, 2020) (denying motion for compassionate release for failure to exhaust administrative remedies; concluding that "exhaustion is required when mandated by Congress" and cannot be excused or waived); see also United States v. Solis, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019). The Eleventh Circuit has described the statutory prerequisite within § 3582(c) as "a

jurisdictional limitation . . ., noting [that] a district court has 'no inherent authority' to modify a sentence that has already been imposed." United States v. Brennan, 766 Fed. Appx. 911, 913 (11th Cir. 2019) (quoting Phillips, 597 F.3d at 1194-95).[2]

It is undisputed that Defendant initiated the administrative process with the BOP in January 2020. However, the Government contends that Defendant has not exhausted his administrative remedies *as to the coronavirus pandemic* because his original Motion filed in January 2020 did not raise the pandemic as a factor to be considered in support of his request for compassionate release.

The record reflects that, initially, Kimbrough requested a reduction of sentence and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based upon the stacking of his four § 924(c) offenses, having served nearly 30 years of his custodial sentence, and his poor health. [Doc. 107, Defendant's Exhibit A

---

[2] Whether administrative exhaustion in this context is characterized as jurisdictional or a claim processing rule that can be waived, courts applying § 3582 tend to agree that the intent of the statute is clearly to afford the BOP the opportunity, in the first instance, to consider compassionate release. See, e.g., United States v. Lepore, Case No. 1:15-CR-367-1-TWT, Doc. 336, at 3 (N.D. Ga. April 7, 2020); accord United States v. Johnson, ___ F. Supp. 3d ___, ___, 2020 WL 1663360, at *1 (D. Md. April 3, 2020) (finding exhaustion jurisdictional, and stating that § 3582(c)(1)(A) "does not provide any exceptions to these exhaustion requirements, and this Court may not create one by judicial order"); United States v. Russo, 2020 WL 1862294, at **4-5 (S.D.N.Y. April 14, 2020) (finding administrative exhaustion requirement a non-jurisdictional claim-processing rule).

("Exhibit A") – Reduction in Sentence Application ("RIS") and RIS Response]. In February 2020, the Warden denied Defendant's RIS and instructed Kimbrough to direct his request to the sentencing court. [Exhibit A at 5]. Defendant pursued administrative channels and appealed the Warden's unfavorable decision. [Exhibit A at 8]. In doing so, Kimbrough argued on March 6, 2020, that he "fit the criteria for compassionate release" in part "[b]ecause of [his] health problems and the coronavirus." [Exhibit A at 11 (a duplicate of the document originally submitted by Defendant at Doc. 104-2 at 7)]. As such, the Government's "issue exhaustion" argument is not well taken. Moreover, Kimbrough's recent reliance on COVID-19 merely "illustrate[s] the increasing danger presented by the defendant's previously cited health conditions" and does not constitute a "new" reason that must first be presented to the BOP. United States v. Coker, 2020 WL 1877800, at *3 (E.D. Tenn. April 15, 2020) (rejecting lack of exhaustion argument where prisoner's initial and pre-coronavirus compassionate release motion to BOP was based on emphysema, COPD, and near total dependence on oxygen and a wheelchair, and prisoner's motion to sentencing court cited the same medical conditions as well as increased health concerns in light of coronavirus).

      For these reasons, the Court concludes that Defendant has met his burden to demonstrate exhaustion of administrative remedies.

**Merits**

The compassionate release provision in § 3582(c)(1)(A) provides for a sentence reduction for a defendant based on "extraordinary and compelling circumstances," which is not defined in the statute. 18 U.S.C. § 3582(c)(1)(A). "The application notes to § 1B1.13 list three criteria for consideration as extraordinary and compelling circumstances under § 3582(c)(1)(A): (1) medical condition; (2) advanced age (at least 65 years old); and (3) family circumstances." United States v. Nasirun, 2020 WL 686030, at *2 (M.D. Fla. February 11, 2020) (citing U.S.S.G. § 1B1.13, cmt. n. 1(A)-(C)); and see Solis, 2019 WL 2518452, at **2–3 (citing, *inter alia*, 28 U.S.C. § 994 (authorizing the Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction)).³ There is also a general catchall provision. Id. n.1(D).

---

³ The Application Note reads in pertinent part:

> (A) Medical Condition of the Defendant –
> (i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory) . . . .
> (ii) The defendant is –
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

While neither the Sentencing Commission nor the Eleventh Circuit has opined on the role of U.S.S.G. § 1B1.13 following the First Step Act, this Court concludes that the policy statement, while informative, is "helpful guidance" as opposed to a limitation and that this approach is most consistent with the intent of the First Step Act. See United States v. Kowalewski, 2:13-CR-45-RWS-JCF, Doc. 251 (N.D. Ga. April 30, 2020) (discussing court split and determining that courts are "authorized to consider the enumerated circumstances [found within §1B1.13], as well as circumstances other than, or in combination with, the enumerated circumstances") (citing, *inter alia*, United States v. Clark, 2020 WL 1874140, at *2 (M.D. N.C. April 15, 2020); United States v. Beck, 2019 WL 2716505, at *5 (M.D. N.C. June 28, 2019)); accord Dinning v. United States, 2020 WL 1889361, at *2 n.1 (E.D. Va. April 16, 2020) ("this Court has the discretion to provide relief to petitioners who do not fall directly within the Sentencing Commission's current policy statement").

At the outset, Section 3582 requires the Court to consider any applicable factors within 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). The Sentencing Guidelines also require the Court to consider whether the defendant is a

---

U.S.S.C. § 1B1.13, app. note 1 (emphasis added).

danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13.

*Section 3553(a) Factors*

Title 18, United States Code, Section 3553(a) requires that the Court "shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing identified in paragraph (2) of the statute. Section 3553(a) provides that the Court shall consider the following when fashioning a sentence:

> **(1)** "the nature and circumstances of the offense and the history and characteristics of the defendant;"
> **(2)** "the need for the sentence imposed--
>   **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   **(B)** to afford adequate deterrence to criminal conduct;
>   **(C)** to protect the public from further crimes of the defendant; and
>   **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"
> **(3)** the sentencing guidelines;
> **(4)** "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and
> **(5)** "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553 (2018)); and see United States v. Chambliss, 948 F.3d 691, 693-94 n.3 (5th Cir. 2020) (quoting 18 U.S.C. § 3553(a)).

First, the nature and circumstances of the offenses of conviction are troublesome in that armed robbery is a personal crime - a crime of violence; and, firearms were used to accomplish four of the bank robberies. Although Defendant, through counsel, argues that the offenses did not result in loss of life or serious injury, Defendant stands convicted of serious and dangerous criminal acts.

Regarding the history and characteristics of the Defendant, Kimbrough's significant rehabilitative efforts and good behavior during incarceration stand in contrast to the conduct Kimbrough was convicted of (and his prior criminal history – Category VI). [Doc. 109 at 1-2 (citing Presentence Report ¶¶ 85-87)]. Kimbrough points to a spotless disciplinary record for over 20 years, the completion of more than 3000 hours of educational and vocational programming, employment with UNICOR since 2001, and his low risk of recidivism based upon his strong support network, a specific reentry plan, and age/maturity. [Doc. 107 at 43-51; Doc. 110 at 2]. With that said, the question remains: What is the risk that Kimbrough presents a danger to the community present-day? The current information proffered by Defendant from various individuals, including a prison volunteer, multiple family members, and "outstanding" ratings from his UNICOR supervisor, provide support for his claim of rehabilitation. [Doc. 107, Exhibits C, D].

Second, as for the need for the sentence imposed, including the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the Court readily finds that these interests are satisfied by the almost 30 years already served in prison. The same is true concerning the need for the sentence to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. Defendant has also taken full advantage of programming within the BOP.

Third, Defendant presents a creative proposed re-calculation under the sentencing guidelines that would have the Court take into account Kimbrough's good-time credit and an adjustment for acceptance of responsibility in light of his willingness to enter a guilty plea in 1993 in exchange for a 20-year sentence (an offer that was allegedly rejected by the prosecution). [Doc. 110 at 39-41]. The most pertinent sentencing guideline consideration is that Kimbrough was sentenced before United States v. Booker, 125 S. Ct. 738 (2005), rendering the guidelines advisory.

Fourth, as is discussed in greater detail *supra*, the need to avoid unwarranted sentencing disparities with those convicted of similar conduct favors a reduction in sentence.

Fifth, concerning the need to provide restitution, Kimbrough was ordered to pay restitution in the amount of $31,347.64. According to the Government, only $70 has been paid. [Doc. 41]. Defendant's Exhibit C reflects that Kimbrough elected to defer restitution payments while incarcerated. [Doc. 107, Exhibit C at 15]. Kimbrough asserts that he will seek employment as a barber if released.

Considered *in toto*, the Court finds that the relevant § 3553(a) factors favor a reduction of sentence. As such, the Court turns to the question of "extraordinary and compelling" reasons to justify compassionate release.

### *"Extraordinary and Compelling Reasons"*

Here, Kimbrough argues both medical condition and "unintended gross disparate sentence" (due to § 924(c) stacking) qualify as "extraordinary and compelling reasons." He also contends that COVID-19, in combination with his medical condition, provides an additional reason to authorize compassionate release in his case. Defendant contends that, if released, he will be able to obtain improved and necessary medical treatment. Alternatively, Defendant asks the Court to consider ordering a period of home confinement until he is eligible for immediate release. As detailed in his BOP Individual Re-Entry Plan, Kimbrough has the support of a fiancé, extended family, a residence available to him, and he

has taken advantage of vocational training while in prison that may enable him to secure employment upon release. [Doc. 107, Exhibit C].

As for any alleged danger posed by Defendant upon release, the Court highlights that Kimbrough has been incarcerated since 1991 and he is sixty (60) years old with serious medical conditions and physical limitations. See 18 U.S.C. § 3142(g)(B)(i) and (iii). Despite his prior criminal history, Kimbrough is unlikely to reoffend. [Doc. 107 at 46-48].

### *Serious Medical Conditions*

The record supports Kimbrough's claim that he suffers from serious medical conditions, including cardiomyopathy (heart disease) dating back to 2012, cerebrovascular disorder (brain affected by ischemia or blood shortage or bleeding involving cerebral blood vessels), hypertension (high blood pressure), hyperlipidemia (high cholesterol), and diabetes mellitus, type II.[4] [Exhibit A, *passim*]. Defendant emphasizes that his medical conditions, primarily, *his heart disease and history of stroke* - both conditions resulting in hospitalizations and an acute cardiac episode in February 2020 - are among those recognized by The Centers for Disease Control and Prevention ("CDC") as rendering him more

---

[4] The record reflects that Defendant's diabetes is currently controlled with medication. [Exhibit A at 6, 21].

vulnerable to adverse outcome in the event he contracts COVID-19.[5] [Doc. 107 at 36-37 (listing cases granting compassionate release in part based upon heart disease)]. Indeed, counsel asserts that Kimbrough is "medically fragile," placing him at a substantially increased risk in the event he contracts coronavirus. [Doc. 107 at 20]. Defendant also contends that he can improve the quality of his medical care – particularly his cardiac care - if released from prison. [Doc. 107 at 49-49, Exhibit A].

### *Unintended Gross Disparity in Sentence*

As noted, Defendant argues that the Court should take into consideration changes in the sentencing laws related to § 924(c) offenses, namely, that the "stacking" of multiple § 924(c) offenses is no longer permitted. Another provision of The First Step Act (Section 403) amended 18 U.S.C. § 924(c) to eliminate stacking of § 924(c) offenses in situations like Defendant Kimbrough's. 18 U.S.C. § 924(c)(1)(C) (as amended 2018); and see United States v. Haynes, ___ F. Supp. 3d ___, 2020 WL 1941478, at *5 (E.D. N.Y. April 20, 2020) ("Section 403 . . . took the extraordinary step of outlawing the draconian practice of 'stacking' §

---

[5] *People Who Are at Higher Risk for Severe Illness*, CDC ONLINE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited July 30, 2020).

924(c) convictions for sentencing purposes in a single prosecution").[6] Section 403's amendments to § 924 were not made retroactive but were described as a "Clarification." First Step Act, § 403(b). The Government contends that the Court should not entertain this argument. [Doc. 109 at 8-10].[7]

Like most compassionate release issues, courts have taken different positions on the question of changes in sentencing law serving as a basis for a compassionate release motion.[8] As previously discussed, under the catchall

---

[6] Like the facts here, the Haynes prosecution involved multiple robberies and the use of firearms. Additional § 924(c) charges were brought in a superseding indictment after Haynes rejected a plea offer that would require him to plead guilty to a single § 924(c) offense and the robberies. Haynes' sentence of 558 months or 46 ½ years was reduced to time-served on a motion for compassionate release after he had served nearly 27 years of his sentence. The court found that, despite the original offenses of conviction, Haynes' record of imprisonment established that he was no longer a danger to the public and that § 3553(a) factors had been satisfied with the period of incarceration Haynes had already served and that the legislature's amendments to § 924(c) reflected that the reduced sentence was sufficient but not greater than necessary.

[7] In fact, the Government argues that, even under Defendant's calculations, a reduction of sentence to (at least) a sentence of 37.5 years means that, if sentenced today, Defendant would still have almost a decade left on his sentence. [Doc. 109 at 9-10]. The Government suggests that, at minimum, consideration of the stacking issue is premature.

[8] Compare United States v. Adeyemi, 2020 WL 3642478, at **20-28 (E.D. Pa. Jul. 6, 2020), United States v. Decator, 2020 WL 1676219, at *3 (D. Md. April 6, 2020), and United States v. Brown, 2020 WL 2091802, at *7 (S.D. Iowa Apr. 29, 2020); with United States v. Neubert, 2020 WL 1285624, at *3 (S.D. Ind. March 17, 2020) (disparity between defendant's actual sentence and the one he would receive if he committed his crimes today is not an "extraordinary and compelling circumstance").

provision of § 1B1.13, app. note 1(D), courts are authorized to consider matters beyond those explicitly identified within U.S.S.G. § 1B1.13 in evaluating motions for compassionate release under The First Step Act, and the undersigned does so in this instance. See United States v. Young, 2020 WL 1047815, at *8 (M.D. Tenn. March 4, 2020) (citations omitted) (considered in conjunction with defendant's age, length of sentence served, and record of rehabilitation, "the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason" to reduce sentence pursuant to § 3582(c)(1)(A)).

In this case, Defendant Kimbrough's custodial sentence is *45 years longer* than it would be if he were sentenced after Section 403 of The First Step Act amended § 924(c). Certainly, the Court may consider this disparity and unusually long sentence in evaluating whether reduction of sentence is appropriate. See United States v. Redd, 2020 WL 1248493, at *9 (E.D. Va. March 16, 2020) ("the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act"); see also United States v. Cantu-Rivera, 2019 WL 2578272 at *2 (S.D. Tex. June 24, 2019) (considering as one of several factors "the fundamental change to sentencing policy carried out in the

15

First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions"); and see United States v. Maumau, 2020 WL 806121, at *8 (D. Utah February 18, 2020) (observing grant of reduction of sentence under § 3582 does not have to result in time-served sentence or immediate release) (citation omitted). That Section 403's amendment is not to be retroactively applied to all sentences, does not preclude consideration here. See, e.g., Brown, 2020 WL 2091802, at *9.[9] As persuasively argued on Defendant's behalf, notwithstanding retroactivity of the amendment, it was never the intent of Congress for stacking to occur for multiple § 924(c) convictions absent an intervening conviction – which did not occur here. See, e.g., Haynes, 2020 WL 1941478, at *5; and see United States v. Urkevich, 2019 WL 6037391, at *4 (D.

---

[9] In Brown, the court articulated its rationale as follows:

> The Court is sensitive to the fact that retroactivity for sentencing calculations generally is the Legislature's province. But Congress already has shown how factors that are not sufficient to establish an "extraordinary and compelling reason" alone can still be considered with other factors. *See* § 994(t). Thus, although the Court cannot make § 403 of the First Step Act retroactive, it can still consider the resulting sentencing disparity as part of a motion for compassionate release. And if this is so, it is hard to argue that the manifest unfairness of keeping a man in prison for decades more than if he had committed the same crime today is neither extraordinary nor compelling. As numerous courts have held, this, too, cuts in favor of a sentence reduction under § 3582(c).

Neb. November 14, 2019) (recognizing "the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed" as extraordinary and compelling reason to reduce sentence). For this reason, the Court finds the "sea change" in sentences for § 924(c) convictions, a proper factor to consider and one of several extraordinary and compelling reasons to reduce Defendant Kimbrough's sentence.

### *Combination of Factors*

Finally, Defendant's record while incarcerated supports his claim that he is successfully rehabilitated, that he is a low risk for recidivism, and that he no longer poses a danger to the community.[10]

Based primarily upon Defendant's serious medical conditions, considered in combination with the increased risk his medical conditions pose given the coronavirus pandemic, his record of rehabilitation, and the fact that, if sentenced today for the same conduct, Defendant would be subject to a significantly lower mandatory term of imprisonment, the Court finds that Defendant Kimbrough has met his burden of establishing "extraordinary and compelling" reasons for a reduction of sentence under § 3582(c)(1)(A).

---

[10] Defendant's rehabilitation is only one factor but is not determinative. See 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release).

**Conclusion**

It is hereby **ORDERED** that Defendant's Amended Motion for Compassionate Release [Docs. 104, 107] is **GRANTED**. Accordingly, Defendant's term of imprisonment is **REDUCED to TIME SERVED**, followed by a term of supervised release of five (5) years under the same terms and conditions previously imposed. As a new condition of supervised release, Defendant shall serve the first six (6) months of supervised release in **HOME CONFINEMENT**. It is further **ORDERED** that the BOP shall release the Defendant from the custody of FCI Coleman after a **FOURTEEN (14) DAY** quarantine period and medical clearance to minimize the possibility of any spread of COVID-19 from the inmate to the public.

Defendant shall contact the United States Probation Department Office by phone within three days of his release and will be instructed at that time as to further reporting arrangements. Defendant shall cooperate with the Probation Department via phone or video/phone conference with respect to his terms of supervised release and reporting. Defendant shall promptly notify his Probation Officer in the event he develops symptoms of coronavirus or is confirmed positive within the first two months of his release to ensure that BOP is properly advised for public safety reasons.

Defense counsel and the Government are both **DIRECTED** to provide the BOP with a copy of the instant Order.

**SO ORDERED** this 3rd day of August, 2020.

_____
**RICHARD W. STORY**
United States District Judge